**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| INUPIAT COMMUNITY OF THE ARCTIC SLOPE,<br><br>    Petitioner,<br><br>  v.<br><br>KENNETH LEE SALAZAR, Secretary of the Interior; BUREAU OF OCEAN ENERGY MANAGEMENT,<br><br>    Respondents,<br><br>STATE OF ALASKA; SHELL GULF OF MEXICO INC.,<br><br>    Respondents-Intervenors. | No. 12-70440<br><br>MEMORANDUM[*] |
| NATIVE VILLAGE OF POINT HOPE; ALASKA WILDERNESS LEAGUE; CENTER FOR BIOLOGICAL DIVERSITY; DEFENDERS OF WILDLIFE; NATIONAL AUDUBON SOCIETY, INC.; NATURAL RESOURCES DEFENSE COUNCIL; NORTHERN ALASKA ENVIRONMENTAL CENTER; | No. 12-70459 |

---

  [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

OCEANA; RESISTING ENVIRONMENTAL DESTRUCTION ON INDIGENOUS LANDS, REDOIL; SIERRA CLUB; THE WILDERNESS SOCIETY, INC.; OCEAN CONSERVANCY,

Petitioners,

v.

KENNETH LEE SALAZAR, Secretary of the Interior; BUREAU OF OCEAN ENERGY MANAGEMENT,

Respondents,

STATE OF ALASKA; SHELL GULF OF MEXICO INC.,

Respondents-Intervenors.

On Petition for Review of a Final Agency Action
Bureau of Ocean Energy Management

Argued and Submitted May 15, 2012
Pasadena, California

Before: KOZINSKI, Chief Judge, BEA and IKUTA, Circuit Judges.

In these expedited petitions, Inupiat Community of the Arctic Slope and

Native Village of Point Hope et al. (collectively, "petitioners") challenge the

Bureau of Ocean Management's (BOEM) approval of Shell Gulf of Mexico Inc.'s

2

plan for exploratory drilling in the Chukchi Sea under the Outer Continental Shelf Lands Act (OCSLA).

Petitioners incorporate by reference much of the briefing and argument from the companion case challenging drilling in the Beaufort Sea. *See Native Vill. of Point Hope v. Salazar*, No. 11-72891, --- F.3d ---- (9th Cir. 2012).[1] To the extent such incorporation by reference is sufficient to preserve these arguments, we have reviewed the applicable excerpts of record and reject petitioners' claims for the same reasons expressed in our decision in that case.

Specifically, to the extent it was preserved, petitioners' argument that the Chukchi Sea exploration plan's description of the well-capping stack and containment system does not comply with the informational requirements of 30 C.F.R. § 550.213(d) fails. BOEM could reasonably conclude that the seven-paragraph description of the technology satisfied § 550.213(d)'s requirement of a "description and discussion of any new or unusual technology." *See Native Vill.*, No. 11-72891, at *16–19. We also reject petitioners' argument, to the extent preserved, that the exploration plan does not comply with 30 C.F.R. § 250.107(c),

---

[1] There is one major difference: These petitions do not include the argument raised in the Beaufort Sea petitions that BOEM erred by approving Shell's exploration plan in the absence of an approved oil spill response plan as required by 30 C.F.R. § 550.219(a).

which requires use of the best available and safest technology (BAST), because the authority to decide whether the BAST standard has been satisfied is vested in the Bureau of Safety and Environmental Enforcement (BSEE), the agency tasked with review of Shell's oil spill response plan, not BOEM. *See Native Vill.*, No. 11-72891, at \*19 n.10; *see also* 76 Fed. Reg. 64,432, 64,435 (Oct. 18, 2011).

BOEM also did not err in approving the exploration plan without expressly reconciling Shell's proposal to use a well-capping stack and containment system in the event of an oil spill with Shell's statements in its 2010 plan that a well-capping system was not feasible, because such reconciliation is not required. *See Native Vill.*, No. 11-72891, at \*20–21. Moreover, because well-capping was just one of many relief efforts proposed by Shell in the exploration plan, and because the record suggests that "[s]ubsea capping capability has recently been developed" and "is directly transferable to Shell's operations in the Chukchi sea," it was reasonable for BOEM to conclude that the exploration plan would not "probably cause serious harm or damage" to environment, as required to approve the plan. *See* 43 U.S.C. §§ 1334(a)(2)(A)(i), 1340(c)(1); *see also Native Vill.*, No. 11-72891, at \*21–22.

Nor did BOEM err in approving Shell's exploration plan without expressly reconciling the difference between the plan's estimate for the time it will take to drill exploration wells and the time it will take to drill an emergency relief well.

4

The exploration plan's estimate that it would take a shorter time to drill relief wells than to drill exploratory wells was "supported by substantial evidence on the record considered as a whole" and is therefore "conclusive." 43 U.S.C. § 1349(c)(6). Specifically, the exploration plan explained that "[r]elief well drilling is rapid" because the relief well does not necessarily require the drilling of a mudline cellar; relief wells may intercept a deep blowout above the total vertical depth; and, in the event of a blowout, additional resources will be funneled into drilling the relief well. *Cf. Native Vill.*, No. 11-72891, at *22–24. BOEM could reasonably accept the exploration plan's site- and reservoir-specific estimates of the time it would take to drill a relief well, as opposed to the slightly longer times estimated by the Lease Sale 193 blowout analysis, which was based on an unspecified location in the Chukchi Sea. Further, BOEM's conclusion that Shell provided a realistic estimate of the time it would take to drill a relief well is a technical issue that lies squarely within the agency's scientific expertise and therefore is entitled to "great deference." *See Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 869 (9th Cir. 2003).

Finally, because the OCSLA regulations permit BOEM to approve an exploration plan with conditions so long as the exploration plan "complies with all applicable requirements" under OCSLA, 30 C.F.R. § 550.233(b)(1), BOEM did

not err in imposing conditions on Shell as part of BOEM's approval of the Chukchi Sea exploration plan. *See Native Vill.*, No. 11-72891, at *24–25.

**DENIED**.